May it please the Court, I'm Robert Jobe, and I'm appearing today on behalf of the petitioner, Mandeep Kaur. In January of 2003, an immigration judge granted Ms. Kaur's application for asylum, found her credible, granted the application, and the government waived appeal. Two months later, the government made a motion to reopen, arguing that it had uncovered evidence through an overseas investigation that suggests that Ms. Kaur's application for asylum was untrue, fraudulent. The problem for the government was that the report upon which its motion was based had been completed some seven months before the final hearing in this case. And the regulations that govern motions to reopen, they say quite specifically that an immigration judge may not grant such a motion unless the immigration judge is satisfied that the evidence that the moving party seeks to present was both unavailable and could not have been discovered or presented at the time of the original hearing. Let's say we take your point that the report was obviously extant at the time of the hearing. Is there any other exception that might apply because of fraud or something of that nature? No. The government made that argument to the Board of Immigration Appeals. In fact, when they appealed the immigration judge's ruling, they never argued to the judge that the evidence that they're trying to present now was, in fact, unavailable. They never argued that it could not have been discovered or presented at the time of the original hearing. They made a purely legal argument, and if you look at the first footnote in their brief to the Board, they expressly say this is purely a legal question. The BIA didn't adopt their legal analysis. It went right to a factual question about the unavailability of the evidence, notwithstanding the fact that the government never even argued that the evidence was unavailable. And they reversed on that factual basis, finding that they disagreed with the judge, and they said that we disagree with the IJ's conclusion that the investigation report was or should have been available to DHS on the date of the hearing. So they're applying the standard that we all, you know, we think was applicable, but they disagree with the judge's factual findings under that standard. And to just be clear, my understanding is the BIA never, when you said never reached the issue, they never decided the issue, didn't adopt the reasoning. They went solely with the other finding, right? Right. So that question has never been answered by the BIA, whether this purely legal question of whether the government is required to satisfy the unavailable requirement really hasn't been addressed, right? Not expressly. Well, I'm sorry. It's our view that certainly implicitly they rejected the government's argument, because otherwise they wouldn't have had to decide the factual question. If the government's position was correct, we would not be arguing about whether the evidence was in fact unavailable. I think Judge Gould might have a question. Counsel, if I could ask you a question, please. Yes, Your Honor. You know, the BIA did review whether there should be a reopening. Yes. So is our court free, if we want to do so, to adopt the position that the government had first urged to the BIA, which the BIA did not pass? They did not adopt it. No, Your Honor. And tell me why our court could not make a ruling as a matter of law that if there's been a fraud, that a matter can be reopened based on the fraud? Well, there are two problems with that. I mean, the first problem, the biggest problem, Your Honor, is that the basic principle of judicial review when it comes to administrative decisions goes back to Chenery decisions from the 1950s that says that this court reviews an administrative agency's decision based only on the reasoning set forth in that decision. So here, you know, you're limited to reviewing the reasons that the BIA itself invoked to justify reopening. And their reasoning is limited to their belief that the immigration judge was wrong in concluding that this evidence was in fact unavailable. So that's really the only issue before the court. That legal question, since the BIA didn't invoke that argument, it's not before the court, the real issue, it seems to me, is whether remand is appropriate for the BIA to rule on that question in the first instance or whether the board's decision somehow implicitly rejects it. Certainly our view is that the BIA is implicitly rejecting that argument because that argument was the only issue presented in the government's brief. And it was Well, if they implicitly reject it, that would seem to be contrary to your general argument because if they've rejected it, then we should be able to review that rejection. No, because it's not the basis of their decision, Your Honor. The basis of their decision is simply that the evidence we disagree with the immigration judge that this evidence was unavailable. They don't have any legal analysis about this. At most, it's something lurking in the background that they don't expressly address. So it's not, in our view, it's not the board isn't invoking that principle as the basis of its decision. It went on different grounds. So under Chenery, we couldn't supply that as a reason for the reopening because that wasn't the agency's reasoning. Right. And I would say that's absolutely correct. The most that you could do, if you wanted an answer on that question, is pursue it to Ventura because it's a legal question that the BIA didn't offer any reasoned analysis on. The most you could do is remand and instruct the BIA to decide that question in the first instance. And then if the BIA reaches a conclusion adverse to our client, we would be back in the court. But you'd have at least the benefit of the board's reasoning, its analysis, so that you could review it more intelligently. Okay. That's helpful. I guess what's bothering me, but I don't know if there's any answer for this, but if someone is here in the U.S. as a result of a fraud, if that can never be reviewed after the fraud is discovered, if the government takes too long to raise it, does that mean the person, until the end of their time, gets to stay in the U.S. based on a fraud? Well, I can't speak about every case. But the reason behind the rule, Your Honor, obviously, generally there's no time limit on the government making motions to reopen to terminate asylum for fraud. They can do that at any time. The only thing that the rule precludes is the government wasting the court's time by trying to reopen proceedings that have already been completed based on evidence that they could have and should have presented the first time around. The rule is really one to just promote judicial economy. The government is relatively unhampered in its ability to make these motions because, like I say, it can make them any time, as long as the motion is based on evidence that it could not have presented the first time around. If it did and it's just the government couldn't get its act together, the regulation says judicial economy takes precedent. We're not going to reopen in such situations. And, again, you know, what I find troublesome about this case is we're arguing, you know, almost based on an assumption that there's fraud here, but we dispute that vigorously. We don't think that the government's report establishes prima facie case for fraud. But the simple fact of the matter is we shouldn't even be here because these proceedings never should have been reopened. The board's ---- I understand your client contests that there's a fraud. And I thought the I.J. should have permitted the doctor to testify by telephone so that you could get to the heart of it better. But it does bother me, the idea that if the government waits too long, that it can be precluded from bringing a fraud claim. And let me just reiterate on that point, Your Honor, because I totally understand your concern there and that would be a troublesome result. But that's not the result. The result is that the rule is that the government can make a motion at any time. It's not subject to the normal 90-day limit on making a motion to reopen. It can make a motion to reopen to terminate an asylum grant at any time. But for it to do that, again, it has to show that the evidence upon which the motion is based was not in its possession and they could not have presented it the first time around. It encourages the government to litigate its case before the immigration judge, not piecemeal, but all at once. They can't withhold evidence, see what the judge does, and then try to reopen. That's the basic purpose of the rule. But it elevates the policy of finality over a policy of rectifying a fraud, assuming it was a fraud. Only in cases where the government was withholding evidence from the first hearing. Right. Yes. Okay. Thank you. It's very helpful. I just want to talk, unless you have any other questions about this motion to reopen part, I just want to also just mention real quickly the issue of cross-examination because the judge admitted this report without giving us any opportunity to cross-examine the authors, cross-examine the author of the report. And for us, this is a big deal because, you know, we think that What's in the report that you really dispute? The report says the phone number is no good and apparently there's no dispute about the fact that the phone number is no longer any good. Right. Was there a cross-examination? What in the report do you factually challenge? Let me give you a couple examples. I mean, the whole issue, the big issue is not whether the phone number is still working. It's when did the phone number stop working. And on that point, you know, all we have here is in this thing it says the writer called the residence and give it on the letterhead. A lady responded on that number and informed the writer that the telephone number belongs to this other guy, Harbinder Jeet, and he's had it for 10 years. We want to know, you know, who is this woman, how does she have, what's the basis of her knowledge, her belief that this guy, because she's not saying she's had the phone number for 10 years. She's saying this other guy's had it for 10 years. I want to know who she is, how is she related to this guy. What's the basis of her belief that this guy's had this phone number for 10 years, because that's a critical fact. We think, you know, the phone number was sold some, you know, five years before the 2005 hearing. They're saying 10 years. Well, that dispute right there is critical to how much weight to give this report. But we don't know who the lady is. She's not identified. We have no opportunity to cross-examine the author of the report. Judge Gould's point was Dr. Panu, how do you pronounce that? Dr. Panu. He could have cleared it all up had he been allowed to testify. Right, he could have, right. But at the same time. Have you been through cases where a witness overseas testifies and there's a concern over how do you know you're really talking to Dr. Panu on the phone? We do it all the time. How is that, how do you authenticate? Do you have somebody, does he show his credentials at a consulate or something? Yeah, I mean, normally what happens, I mean, in a case like this where we're going to cross-examine, for example, the author of this report, that person, they work for the embassy. So, you know, they're at the embassy. We connect them up by video conference or by telephone and we cross-examine them. No big deal. The doctor, it's harder because he's 30 hours away from Delhi. He's in Rajasthan. It's a long trip. But so in order to confirm. Are there consulates around? I mean, you would have to go to an embassy. That's a possibility because there are other consulates. And so if we could get the government to agree to some other consulate, then sure. He could show up at another consulate that's closer by. I mean, all he'd have to do is prove to the satisfaction of a consular officer that he's Dr. Pano. Exactly. Right. Did you want to save any time? I'll blizzard the balance of my time. Thanks. Good morning. Good morning. May it please the Court. My name is Dawn Conrad and I'm here today on behalf of the United States Attorney General. The Board did not abuse its discretion when it reopened Petitioner's proceedings in 2004. The Board made a judgment decision. It was not a factual finding. And the Board has the authority to determine whether new and previously unavailable requirement for motions to reopen have been met. The Board applied the law to the undisputed facts that the INS report was dated May 2002 and was received by the DHS trial attorney in February 2003. Counsel, could I stop you there? Sorry, forgive my interruption, but the BIA wrote, quote, It's not clear when the report was actually processed and sent to DHS requesting unit or when it was received. And then it goes on from there to say, to make basically a factual finding, that they'll accept the presentation, which I think they mean representation. That's right. That the report was unavailable. Isn't that a nonlinear reasoning? How does the second sentence follow from the first? Well, I think what the report was saying is it was not clear. I mean, what the Board was saying was it was not clear from the record when the report was actually received by DHS or DHS San Francisco. And what we have basically is very limited information in the record. We have the DHS attorney's footnote with the motion to reopen in 2003 saying that she did not receive the report until February 2003. But we also have the hearing transcripts from January 2003 and June 2002 in which the DHS trial attorney represents that they have not received the report yet. Well, I appreciate the references that you're just calling my attention to. But I've looked at them, and it seems to me that they can be interpreted to mean just that that particular attorney didn't receive their report, didn't land on my desk, in other words, which is really very different than saying the government didn't have it, which goes to opposing counsel's point. Well, what we have in this case is the Board determined that because the attorney didn't have it, it was not previously available. So is that a concession, then, or an acknowledgment as opposing counsel is arguing that the government is required to make the showing that the report was unavailable? Isn't that what the BIA was assuming here? The Board did make that assumption in this case. It did not address the legal, the only argument raised before the Board from DHS to counsel in the appeal was a legal argument, which the Board did not address, because the Board finds, I guess, it was unnecessary to address it because the Board finds that this motion did meet that standard. What's the answer to not letting Dr. Pano testify by telephone with the appropriate safeguards? Well, there was absolutely no way to, Petitioner's counsel or Petitioner at the time offered absolutely no way to verify his identity. To call this number in India, it could have been anyone that they would have called. Well, no. I realize if you call a number, you could get jack-of-the-box there. I understand that. But, I mean, there is a mechanism. It's done all the time. I'm a former State judge. I've seen it happen. You know, you have somebody who you trust verify the credentials of the deponent or the witness, whoever it is. Why didn't the immigration judge say, you want to call Dr. Pano, have Dr. Pano show up at the consulate in Timbuktu or wherever it is? Well, the Petitioner did have about two and a half years after she received INS investigation report to try to rebut the findings of the report, and she could have maybe made an attempt to have him go to the nearest consulate. She doesn't run the consulate. You know, the government runs the consulate. I mean, it seems to me like she says, I want to call Dr. Pano. The IJA should have said, okay, let's come up with a way to get Dr. Pano on the phone. Well, there's no evidence in the record that prior to her hearing in August, I think it was 2005, she made any request to have him appear telephonically or she made any request to have him appear telephonically by India. And when did she make the request? The first indication that I have is in the transcript of the August 2005 hearing. If the IJA said, gee, that's too bad, your request is too late, he just said, no, I don't know who's going to be on the phone. That's correct. He did not. He said he had no way to verify this person's identity. But we know that's wrong because there is a way to verify somebody on the phone through the methods we just talked about. And I believe at the time she said there was no way he could get to, well, all we have in the record is a statement that there was no way he could get to a place to verify his identity because it was 30 hours away from his location. I don't know if that applies to all consuls or just the embassy, but that's all we have in the record. To return for a second to the motion to reopen question, this Court has held that it's not sufficient that the evidence physically existed in the world at large. Rather, the evidence must have been reasonably available to the petitioner's case. So they have to show it's not just – it's not sufficient that the INS report was just dated May 2002. There has to be some showing that it could have been previously presented to the immigration court. And in this case – Do we have anything more? I forgive my interruption, Counsel. But do we have anything more than the footnote, the unauthenticated footnote saying I didn't have it? No, we do not. And in this case, it was the DHS attorney's statement, but she wasn't acting as an attorney. She was acting as a party in that statement. But we also have the transcripts, as I pointed out before, noting that it still hadn't been received by DHS counsel in San Francisco at that point. Counsel, if I – Judge Gould, if I could ask you a question. Yes, Your Honor. And I read that you argued the contrary. But assuming for sake of argument that we decide that one can't say the report wasn't reasonably available, that we think it was available, or we think the board made a mistake in saying it wasn't, then illuminate me if we could remand to the theory that a fraud basis to rescind asylum could be raised more than six months after the close of the prior decision. Yes, Your Honor. I think you definitely could. And the board is the proper – as Petitioner's counsel, I think we'll argue the board is the proper body to answer that question in the first instance, the question that was raised by DHS. So I think if this – And if we wanted to do that, I mean, could we tell the board that before they make that decision, they should require the IJ to permit Dr. Panning to give a phone deposition so that the record is adequate to make an assessment of fraud? Because, you know, it's a very serious thing to accuse someone of fraud. And the idea of saying that the Petitioner here engaged in a fraud, but not – a fraud about this particular doctor, but not letting him testify by phone seems strange to me. Well, Your Honor, I think that would be something the board should – could reconsider, but I think there would have to be some sort of way to verify Dr. Pannu's identity than has been offered thus far. We would have to have some sort of – also, I note that in the record, besides his letters, there's absolutely – Petitioner had over two years, almost two and a half years, submitted no evidence of his qualifications, that he was even a doctor, of his resume. There is nothing in the record besides his letter. There is not even a statement from her uncle that supposedly took her to this doctor, that he took her to this doctor, and that this doctor was his friend. It is a very bare-bones record. I didn't know what the normal immigration judge procedures are or the BIA's normal procedures. Like, when I was in private practice, in one case we did a lot of depositions in Japan, and we had to go through a very formal process where the deponents would show up at some official place. And I suppose they probably can do something like that in India, but I don't know if it's ever done in these kinds of cases. Your Honor, I don't know the answer to that either, and I would not be in the position to speculate. Okay. That's a question for the BIA, I guess. Yes. Yes, Your Honor. My next argument, I would just like to turn briefly to the cross-examination argument that Petitioner's counsel raised. I think it's important to note that the Petitioner does not really disagree with the factual findings of the report because she has her own theory of the case, and that is that the doctor lived at this address until 2000 and then moved. So the only thing that she actually disagrees with is the actual conclusion that the doctor's letter was fraudulent. And this is an official government report where the INS officials were presumed to perform their duties properly without motive or interest other than to submit accurate and fair report. And the I.J. properly found that Petitioner's objections to hearsay go more to the weight of the document. If Petitioner had submitted sufficient rebuttal evidence to this document, it is perhaps that the I.J. would have given it less weight. You mean like from the doctor? Well, not only from the doctor, but also from her cousin that allegedly went all around the country looking for this doctor. There's absolutely no statement in the record from this cousin. Also, as the I.J. noted, pictures of this location that she claims was actually some sort of strip mall or a business center for this clinic to support her argument that it is more than just the bank at this location. So there was she had over two and a half years to try to get evidence, and she has submitted other statements from people in India. So obviously that was not too difficult for her. And it's factually distinct from this Court's decision in Sanapian where the INS presented forensic or, I'm sorry, DHS presented forensic reports on the day of the hearing without giving the Petitioner any time to rebut the forensic reports. If the Court has no further questions, we'd just like to ask that you respectfully deny the Petitioner for review. Thank you. Thank you. I want to go back to your point about the BIA's decision where they say it's not clear when the report was actually processed, et cetera. One of the problems we have with this case is that the BIA, by regulation, is supposed to review factual findings of an immigration judge only for clear error. That's the standard. And, you know, it's impossible to conclude that the BIA found these things to be the factual findings of the immigration judge to be clearly erroneous because they themselves recognize that what happened here is not clear. And the reason it's not clear is because the government never maintained in front of the judge or the BIA that this evidence was unavailable. They never presented any competent evidence at all. Normally what you would expect to do here is submit a sworn affidavit describing, you know, you're explaining why this was unavailable. They didn't do that. They've never tried to present any competent evidence on this point. So the motion to reopen was granted erroneously. The stuff about, you know, the doctor and cross-examination, we think that there are some serious issues there. But those issues don't only come up if the BIA was correct in reversing the immigration judge's denial of the motion to reopen to begin with. If the BIA was wrong on that, all this other stuff is irrelevant. So it's our view that the Court should reverse the reopening, tell the BIA that it clearly erred for a whole number of reasons in saying that this evidence was previously unavailable. Suppose we say you're right, it wasn't they were wrong in saying it was previously available. Well, sure, it was previously available. But they've more or less made a case of excusable neglect. They kind of got lost in the shuffle. No, because the regulation says that an immigration judge shall not grant a motion to reopen unless the immigration judge is satisfied not only that the evidence was unavailable, but it goes on to say that the government has to show that the evidence could not have been discovered or presented. And excusable neglect, it's just not good enough. If this were us trying to make this motion to get new evidence in, I have no doubt the BIA would tell us, no, you had evidence, you should have presented it. And the government has to play by the same rules. They shouldn't get a different standard. The regulations don't allow for it. Excusable neglect, that's just not good enough. And if we agree with you, then is your position that we need to remand this so that the BIA decides the legal question in the first instance? Well, it seems to me that the BIA implicitly decided that. But if you disagree with that, then, yes, the case has to go back to the board so that under Ventura they can resolve that question in the first instance. So you said this a couple of times, that they implicitly decided it. And I'm understanding that your argument is based upon the fact that they just didn't address it. I don't see a footnote or I'm not missing anything. That is. It's the only thing that the government argued. The BIA didn't adopt it. They went another route. Okay. Thank you. Jove, thank you. Thank you, Your Honor. Ms. Conrad, thank you, too. The case just argued is submitted. Thank you. Good morning, Your Honor.
judges: Silverman, Gould, Christen